## (Court of Appeal, Parish of Orleans.)

## BELLE ALLIANCE CO., LTD. vs. INTERNATIONAL MOLASSES CO.

1. After a party violating a contract has been put in default he can neither offer to execute his contract, nor insist upon a specific performance by the other party.
2. Where a party fails to comply with an agreement to purchase goods, the measure of damages is the difference between the contract price and the market price.
3. But the vendor must take the usual and proper precautions to minimize the loss by securing the best price obtainable for the goods.
4. Before the enactment of Act No. 249 of 1910, an option, containing no mutuality of engagement, was *nudum pactum* not legally enforceable, from which the promisor could at any time have withdrawn.

Appeal from the Civil District Court, Division "A."

Morgan & Milner for plaintiff and appellee.

Caffery Quintero & Gidiere, for defendant and appellant.

DUFOUR, J.—The plaintiff, alleging that defendant had bought molasses which it refused to take and which had to be subsequently re-sold at a lower price, sues the defendant for the loss in price.

The defences urged are:

1st. That no contract of sale was ever perfected between the parties;

2nd. That, even if there had been a contract of sale, the plaintiff cannot recover damages because, before the re-sale at the lower price, the defendant offered to take the molasses at the price originally agreed upon.

The first defense may at the outset be eliminated.

The construction placed on the transaction by the defendant stamps it as a perfect contract. In letters respectively of date July 24th. and July 30th., the International Company notified the Belle Alliance Company of its intention to buy in open market the same kind of molasses for seven cents and to claim the difference in price from the latter as damages. This is inconsistent with this claim that no contract had been made.

There is no doubt that the defendant violated its obligation to take the molasses at the agreed price of six cents per gallon, and, after it had been put in default, any effort on its part to execute the contract came too late.

It could not insist upon a specific performance by the plaintiff,

### 38 A. 776.

The proper measure of damages in such a case is the difference between the contract price and the market price.

### 115 La., 820.

But the vendor must take the usual and proper precautions to minimize the loss by securing the best price obtainable for the goods.

The present pertinent inquiry is, whether or not, when defendant subsequently offered to buy the molasses at the price originally agreed upon, the plaintiff was in a position to accept the proposition, or whether it had already parted with the property?

If the former was the case, then plaintiff should have prevented the loss by accepting the higher price; if the latter, it has acted within its rights and done its full duty.

After defendant had been put in default for non-com-

pliance with its obligation to purchase, plaintiff asked for bids for the molasses and received one from one Goyer of five cents per gallon.

This transaction appears to have been in the nature of an option—it is so called by the witnesses—by the terms of which Goyer was to accept or reject the proposition by a certain date.

He apparently was to be allowed a chance to place the molasses with his customers before binding himself to its purchase.

The plaintiff company was to be bound by its offer, but Goyer was not.

The plaintiff's witnesses are not quite consistent with themselves, or with each other, but the foregoing facts are fairly deducible from the evidence as a whole, and particularly from the letter of May 8th, of the Belle Alliance Co., written at a time not suspicious. It is apparent that, when Murray made this offer, Goyer had not ratified his acceptance.

The following question was asked of the secretary of the Belle Alliance Company:

Q. "Let us get a direct answer to that question, at the time Mr. Murray came to your plantation and told you he would accept the molasses on behalf of the International Molasses Co., that option was still outstanding. This offer to Mr. Goyer had never been accepted by you on behalf of the Belle Alliance Company?"

The answer was:

"It was outstanding subject to his acceptance."

The testimony is clear that, when defendant's agent, Murray, on May 7th, made the offer to buy the molasses outright at six cents per gallon, he was authorized to do so.

This does not appear to have been questioned by any-

one, until the point was mentioned by all counsel at the argument.

The officers of the plaintiff company do not seem to have had any doubt about the matter. They both testify that they made efforts to get Goyer to release them from the option so that they might sell to defendant, but that his consent was not obtained.

Before the enactment of Act No. 249 of 1910, under well settled jurisprudence, the option, containing no mutuality of engagement, was a **nudum pactum** not legally enforceable, from which the promiser could at any time have withdrawn.

The plaintiff's giving of an option was its own risk.

The moral obligation falls within the scope of commercial ethics and is to be dealt with in accordance with the ideas and wishes of the parties between whom it exists. Under no circumstances, however, can it form the basis for inflicting on a third person damages not warranted by law.

If plaintiff had accepted the offer of the original price subsequently made by defendant, which it was **legally** at liberty to do, no loss would have occurred.

Hence, defendant cannot be held liable.

Judgment reversed and plaintiff's demand rejected at its cost in both courts.

St. Paul, J., takes no part.

February 20, 1911.

Rehearing refused, March 6, 1911.

Writ denied by Supreme Court, March 28, 1911.